IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| James J. Brooks, ) | |
|     Petitioner, ) | |
| ) | |
| v. ) | 1:16cv559 (TSE/MSN) |
| ) | |
| Director of the Department of Corrections, ) | |
|     Respondent. ) | |

<u>MEMORANDUM OPINION</u>

James J. Brooks, a Virginia inmate proceeding <u>pro se</u>, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his convictions of second degree murder and use of a firearm in the commission of a felony in the Circuit Court for the City of Virginia Beach. On August 26, 2016, respondent filed a Motion to Dismiss and Rule 5 Answer, along with a supporting brief and exhibits. Petitioner was given the opportunity to file responsive materials, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7K. Petitioner filed a response on September 14, 2016. For the reasons that follow, respondent's Motion to Dismiss must be granted, and the petition must be dismissed, with prejudice.

**I. Background**

The record reflects the following. Petitioner is detained pursuant to a final judgment of the Circuit Court for the City of Virginia Beach, entered April 9, 2014. Dkt. No.1. Pursuant to a jury trial, petitioner was convicted of second degree murder and use of a firearm in the commission of a felony. Dkt. No. 9-2. Petitioner was sentenced to thirty five years imprisonment. <u>Id.</u>

Petitioner pursued a direct appeal to the Court of Appeals of Virginia, where the appeal was denied. Id. .Petitioner then appealed to the Supreme Court of Virginia asserting the following assignments of error:

> 1. The Court of Appeals erred when it upheld the trial court's conviction of [petitioner] because the eyewitness identification of [petitioner] was unreliable, incredible[,] and inaccurate.
>
> 2. The Court of Appeals erred when it upheld the [] trial court's conviction because the evidence was entirely circumstantial and thus no reasonable jury could have found [petitioner] shot Laurie Escobar.
>
> 3. The Court of Appeals erred when it upheld the trial court's decision to overrule [petitioner's] Batson motion as the Commonwealth's stated reasons for striking the only African American male from the jury were pretextual and purposefully discriminatory, and the trial court did not engage in meaningful Batson analysis as required by the law.

Record No. 150498. By Order dated February 8, 2016, the Supreme Court of Virginia refused petitioner's petition for appeal. Id.

The facts as laid out by the Court of Appeals are as follows.[1]

> [D]uring the early morning hours of August 21, 2012, Laurie Escobar was shot and killed in an apartment in Virginia Beach. Marina Puetz, Puetz's boyfriend, A.J., and Brian Keith Brown were also in the apartment at the time of the murder. [Petitioner] had recently moved out of the residence, and Brown moved into [petitioner's] former bedroom.
>
> [Petitioner] was angry with Escobar because [he] believed she was "a snitch." A week before the shooting, Escobar was arrested and the next day police searched her room and the apartment. [Petitioner] came by asking about the search and what had been said about him to the police. Brown spoke with [petitioner] on the day leading up to the shooting. [Petitioner] asked him if Escobar was at the apartment. Brown responded that he was not at home but would tell [petitioner] if she was there when he returned. Later, Brown sent [petitioner] a message that Escobar was at the apartment and left the door unlocked for him. Within fifteen

---

[1] The Supreme Court of Virginia refused further review of petitioner's direct appeal and state habeas petition. Because the Court of Appeals' February 5, 2015 Order was the last reasoned state court decision on petitioner's claims, its reasoning is imputed to the Supreme Court of Virginia. See Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991).

2

minutes of sending [petitioner] the text message, Brown heard the front door open and moments later heard the gunshots.

Puetz occupied the bedroom next to Brown's and had been living in the apartment when [petitioner] also lived there with his girlfriend. Escobar was visiting Puetz on the night she was murdered. That night, Brown returned home around midnight and visited with them in Puetz's room before going to his own bedroom. A short time later, a masked man entered the apartment, came to Puetz's room, made eye contact with her, looked around the room, and moved to the bathroom. Puetz heard gunshots. She hid in her room and called the police. Despite the mask, Puetz recognized the shooter as [petitioner]. She recognized his eyes as well as his movements and body language. She also recognized his build, his clothing, and a ring he wore.

John Dufford lived with [petitioner] after [petitioner] moved out of the residence he shared with Puetz and the others. Dufford purchased a distinctive type of gun in March 2012 and gave the gun to [petitioner]. Dufford indicated [petitioner] always carried it with him. On the night of the murder, [petitioner] left his apartment between 10:00 p.m. and midnight and returned between 1:30 and 2:00 in the morning. [Petitioner] appeared anxious upon his return but did not say what was bothering him. When Dufford awoke in the morning, [petitioner] and his girlfriend were "glued" to news accounts of the murder. [Petitioner] refused to answer when Dufford asked if he had committed the murder but called the victim "a snitch" and said she "got what she deserved." [Petitioner] and his girlfriend abruptly packed their things, left the apartment, and never returned.

[Petitioner's] cell phone records indicate his phone was used near the murder scene around the time of the murder. All shell casings found at the scene had been fired by the same gun. The type of gun Dufford had given [petitioner] was the same type of weapon that was fired in the apartment. [Petitioner] remained at large until he was located in Norfolk on September 28, 2012.

Record No. 0764-14-1.

While pursuing his direct appeal, petitioner filed a petition for a writ of habeas corpus in the Circuit Court for the City of Virginia Beach on August 14, 2014. In his state habeas petition, petitioner claimed, inter alia, the following.[2]

> 1. Ineffective assistance of counsel, counsel failed to file a motion to suppress identification testimony before trial.

---

[2] The other claims asserted in petitioner's state habeas petition are irrelevant to the instant petition.

>   2. Prosecutorial misconduct. Ineffective assistance of counsel, abuse of discretion. The Commonwealth unfairly prejudiced Petitioner with its closing argument that Petitioner fled after news reports that he was wanted for murder.

CL14-3830. The state habeas court denied and dismissed the petition on December 16, 2014. Id. Petitioner timely filed a notice of appeal. Id. Petitioner requested an extension of time to file his petition for appeal, which was denied by the Supreme Court of Virginia by order dated March 13, 2015. Record No. 150535. By order dated June 16, 2015, petitioner's appeal of the circuit court's order dismissing his habeas petition was dismissed by the Supreme Court of Virginia because "the appeal was not perfected in the manner provided by law because [petitioner] failed to timely file the petition for appeal...." Id.

On May 9, 2016, petitioner filed the instant federal petition, wherein he challenges his convictions on the following grounds.

>   1. The Commonwealth erred in presenting sufficient evidence to prove, beyond a reasonable doubt[,] that [petitioner] shot Laurie Escobar as the eyewitness's identification of [petitioner] was unreliable, incredible[,] and inaccurate.
>
>   2. The trial court erred in ruling the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that [petitioner] shot Laurie Escobar, as the evidence was entirely circumstantial and created suspicion. Thus no reasonable jury could have found [petitioner] guilty of shooting and killing Laurie Escobar.
>
>   3. Ineffective assistance of counsel[:] counsel failed to file a motion to suppress the identification testimony before trial.
>
>   4. Ineffective assistance of counsel[:] counsel failed to object to Prosecution's highly improper remark that mislead [sic] the Jury during its closing argument.

Dkt. No. 1.

## II. Procedural Default

Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court. 28 U.S.C. § 2254(b); Granberry v Greer, 481 U.S. 129 (1987); Rose v. Lundy, 455 U.S. 509 (1982); Preiser v. Rodriguez, 411 U.S. 475 (1973). To comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, a petitioner convicted in Virginia first must have presented the same factual and legal claims raised in his federal habeas corpus application to the Supreme Court of Virginia on direct appeal or in a state habeas corpus petition. See, e.g., Duncan v. Henry, 513 U.S. 364 (1995).

Where a state court has made an express determination of procedural default, the state court's finding is entitled to a presumption of correctness, provided two foundational requirements are met. See 28 U.S.C. § 2254(d); Clanton v. Muncy, 845 F.2d 1238, 1241 (4th Cir. 1988). First, the state court must explicitly rely on the procedural ground to deny petitioner relief. See Ylst v. Nunnemaker, 501 U.S. 797, 802-03 (1991); Harris v. Reed, 489 U.S. 255, 259 (1989). Second, the state procedural rule used to default petitioner's claim must be an independent and adequate state ground for denying relief. See Harris, 489 U.S. at 260; Ford v. Georgia, 498 U.S. 411, 423-24 (1991). When these two requirements have been met, federal courts may not review the barred claim absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris, 489 U.S. at 260.

In this case, Claims Three and Four were raised in petitioner's state habeas corpus application; however, after the petition was denied and dismissed by the trial court, petitioner

failed to perfect an appeal to the Supreme Court of Virginia. Because the Supreme Court of Virginia explicitly relied on a procedural ground to deny petitioner relief and furnished an independent and adequate state ground to default Claims Three and Four, those claims likewise are barred here. Whitley v. Bair, 802 F.2d 1487, 1500 (4th Cir. 1986) ("failure to appeal claims disposed of by state habeas trial court constitutes a procedural bar to further federal review of such claims").

Federal courts may not review barred claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris v. Reed, 489 U.S. 255, 260 (1989). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. See Coleman v. Thompson, 501 U.S. 722, 753-54 (1991); Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990); Clanton v. Muncy, 845 F.2d 1238, 1241-42 (4th Cir. 1988). Importantly, a court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996).

Petitioner states that he filed a motion for an extension of time to file his petition for appeal with the Supreme Court of Virginia, which was denied. Petitioner also argues that he was unable to finish his petition for appeal in a timely manner "because [he] is not super fast at typewriting, and [he] also did not have a lawyer helping [him] with [his] petition." Because this explanation falls short of satisfying the cause and prejudice requirement or demonstrating petitioner's actual innocence, Claims Three and Four are defaulted and they will be dismissed.

### III. Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas corpus petition, a federal court may not grant the petition on that particular claim unless the state court's adjudication was contrary to, or an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts presented at the trial. 28 U.S.C. § 2254(d)(1)-(2). This test erects a "formidable barrier to federal habeas relief" for claims adjudicated on the merits. Burt v. Titlow, 134 S. Ct. 10, 16 (2013). Under this standard, for a state prisoner to obtain habeas relief, he "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based upon an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination violates the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. When reviewing the state court's findings, the federal court is limited to the record before the state court at the time of the decision. See Cullen v. Pinholster, 563 U.S. 170 (2011).

Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the

7

prisoner's case." Williams, 529 U.S. at 413. Importantly, this standard of reasonableness is an objective one. Id. at 409-10; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003). A federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. 2254(e)(1)); see, e.g., Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006).

### IV. Analysis

Petitioner claims that the evidence presented at trial was insufficient to prove his guilt beyond a reasonable doubt because the eyewitness testimony was unreliable and the evidence was circumstantial. Jackson v. Virginia, 443 U.S. 307 (1979) provides the standard by which a federal court must review a habeas petition alleging insufficiency of the evidence. A federal court must determine whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original) (internal citations omitted). Challenges based on the sufficiency of the evidence thus face "two layers of judicial deference." Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012) (per curiam). In a jury trial, such as petitioner's, the jury has the sole responsibility for determining what conclusions to draw from the evidence presented at trial. Thus, an appellate court reviewing a challenge to the sufficiency of the evidence on direct appeal may overturn the trial court's verdict only if no rational trier of fact could have agreed with the outcome. Cavazos v. Smith, 132 S. Ct. 2, 3 (2011) (per curiam). A federal habeas court may only overturn this state court decision if the decision was

"objectively unreasonable;" it may not overturn the decision simply because it disagrees with the outcome. Id. (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)).

### A. Claim One

Petitioner states that the evidence presented at trial was insufficient to prove his guilt beyond a reasonable doubt because Puetz's identification was not reliable pursuant to the standard set out in Neil v. Biggers, 409 U.S. 188 (1972). Petitioner concedes that Puetz had a "good opportunity to view the criminal at the time of the crime," but he asserts that Puetz's degree of attention was compromised because she had smoked crack cocaine "two to three times in the hours immediately preceding the shooting," and she "admitted [she was] very overwhelmed by the situation...." Petitioner claims that Puetz told the 911 dispatcher who was called seconds after the shooting and police officers who arrived on the scene minutes after the shooting that she did not know the identity of the shooter, and Puetz was only able to give a "non descriptive [sic] description of the suspect" to the police when they arrived. Petitioner argues that Puetz only identified him as the shooter after speaking with her boyfriend about the shooter's identity.

> The Court of Appeals denied this claim on direct appeal, stating
>
> Puetz viewed [petitioner] at close range inside her residence immediately prior to the shooting. She knew [petitioner] for a significant amount of time and shared a residence with him until a short time before the murder. She identified [petitioner] with a high degree of certainty and recognized his features as well as his movements, body language, clothing, and jewelry.

Record No. 0764-14-1.[3]

---

[3] Petitioner argued to the Court of Appeals that Puetz's identification was unreliable due to the fact that she smoked crack cocaine the day of the shooting and she was unable to identify the shooter immediately. Although the Court of Appeals did not directly address these arguments in dismissing the appeal, it is appropriate to infer that the Court of Appeals, having heard and considered these arguments, rejected them. See Watkins v. Rubenstein, 802 F.3d 637,

9

> [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Neil, 409 U.S. at 199–200. In light of the Neil factors of reliability, the state court's decision is not objectively unreasonable, nor is it contrary to or an unreasonable application of established federal law. The decision is also not based on an unreasonable determination of the facts. Thus, Claim One will be dismissed.

### B. Claim Two

Petitioner states that the evidence presented at trial was insufficient to prove his guilt beyond a reasonable doubt because the evidence was "entirely circumstantial and created suspicion." Petitioner argues that the testimony showed that five to twelve people used the apartment on a daily basis to use crack cocaine, any one of which could have killed Escobar, for any number of reasons related to the "victim's lifestyle of drug usage." In addition, petitioner states that Escobar's boyfriend pushed her through a glass window a week before she was shot and his fingerprints were found on the door of the bathroom in which Escobar was shot. Petitioner asserts that Escobar left the apartment hours before she was murdered to engage in prostitution, which is inherently dangerous. Petitioner claims that Escobar had tricked people out of money, including someone who took Escobar's phone and who Brown testified was actively looking for Escobar on the day of the murder, near the location where she was shot.

---

649 (4th Cir. 2015) ("[i]n some situations, AEDPA deference allows federal courts to infer from the state court's explicit factual findings and conclusions implied factual findings that are *consistent* with its judgment although unstated") (emphasis in original) (internal quotation marks, citations, and alterations omitted).

Petitioner states that he spoke with Escobar "on the phone only hours before she was shot and there was no talking of snitching and [they] were not upset with each other," thus contradicting the Commonwealth's theory regarding petitioner's motive. Petitioner asserts that the other individual looking for Escobar "had a greater motive to murder" her. Petitioner also argues that there was no evidence linking him with the murder weapon because Brown never saw him with a gun on the day of the murder, "thousands of pistols exist which match the same make and model used in the murder," and Dufford admitted at trial that he lied to the police about the gun.[4] Finally, petitioner argues that expert testimony established only that his cell phone could have been located in any number of locations and could have been anywhere within seven miles of the crime scene.

> The Court of Appeals dismissed this claim on direct appeal, finding that
>
> [i]n this case, ample evidence demonstrated [petitioner] committed the murder. In addition to Puetz's identification of [petitioner] as the intruder, Brown's testimony indicates [petitioner] was angry with the victim, specifically asked if she was in the apartment, and received a message from Brown a short time before the murder stating she was there. Dufford's testimony directly linked [petitioner] to the type of weapon used in the murder and demonstrated [petitioner] returned home a short time after the murder in an anxious state. [Petitioner] fled the following morning after watching news accounts of the crime. Finally, the cell phone records proved [petitioner] was in close proximity to the murder site around the time of the murder. The record fully supports the conclusion that [petitioner] committed the crimes.

Record No. 0764-14-1.[5] Nothing in this analysis is objectively unreasonable, nor is it contrary to, or an unreasonable application of <u>Jackson</u>. Nor is it based on an unreasonable determination

---

[4] Petitioner's argument regarding Dufford's trial testimony that he lied to the police was not presented to the Court of Appeals; however, the jury, as the fact finder, heard this testimony.

[5] Petitioner argued to the Court of Appeals that (1) five to twelve people used the apartment on a daily basis to use crack cocaine, (2) Escobar and her boyfriend had a fight before she was shot (3) Escobar left the apartment hours before she was murdered to engage in prostitution, (4) Escobar had tricked people out of money, (5) someone took Escobar's phone

11

of the facts. Claim Two amounts to no more than an invitation to re-weigh the evidence in a manner more favorable to petitioner, which is plainly prohibited. Because the state court's rejection of petitioner's contention that the evidence was insufficient to support the charges against him was factually reasonable and conformed with applicable federal principles, that result may not be disturbed here, and Claim Two must be dismissed.

## V. Conclusion

Petitioner's Claims Three and Four are procedurally barred. As to Claims One and Two, nothing in the state court record indicates that the state court decisions regarding the sufficiency of the evidence were objectively unreasonable. Accordingly, this petition will be dismissed, with prejudice, by an Order to be issued with this Memorandum Opinion.

Entered this 20th day of October 2016.

Alexandria, Virginia

/s/
T. S. Ellis, III
United States District Judge

---

and was actively looking for Escobar on the day of the murder, (6) petitioner spoke with Escobar on the phone only hours before she was shot and there was no talking of snitching and they were not upset with each other, (7) Brown never saw petitioner with a gun on the day of the murder, (8) thousands of pistols exist which match the same make and model used in the murder, and (9) petitioner's cell phone could have been located in any number of locations. Although the Court of Appeals did not directly address these arguments in dismissing the appeal, it is appropriate to infer that the Court of Appeals, having heard and considered these arguments, rejected them. See Watkins, supra.

12